IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TYRONE THOMAS, #307-369, *
Petitioner,
*
v. CIVIL ACTION NO. CCB-06-248
*
KATHLEEN GREEN and
THE ATTORNEY GENERAL OF THE *
STATE OF MARYLAND
Respondents. *
******

**MEMORANDUM**

Before the Court is the pro se Petition for Writ of Habeas Corpus filed by petitioner Tyrone Thomas (Paper No. 1), respondents' Answer and exhibits filed in response thereto (Paper No. 17), and Thomas's reply (Paper No. 22). After reviewing these papers, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *see also* 28 U.S.C. § 2254(e)(2). For reasons set forth below, the court denies relief and dismisses the petition with prejudice.

**Procedural History**

On January 28, 2002, petitioner was convicted by a jury in the Circuit Court for Baltimore City of attempted first degree murder, first degree assault, reckless endangerment, attempted robbery with a deadly weapon, conspiracy to commit robbery with a deadly weapon, use of a handgun in the commission of a crime of violence or felony, and wearing, carrying, and transporting a handgun.[1] (Paper No. 17, Exhibit 5 at 61-62 and Exhibit 9 at 1). On March 28, 2002, the court denied petitioner's motion for a new trial and sentenced him to twenty-five years incarceration for attempted first degree murder, twenty years concurrent on both the attempted robbery and

---

[1] He also was convicted of being a misdemeanant in possession of a handgun. *Id*.

conspiracy convictions, ten years consecutive (five without parole) for use of a handgun, and three years concurrent on the misdemeanor handgun conviction. (*Id*., Exhibit 6 at 21).

On direct appeal, petitioner argued that (1) the prosecutor's closing argument warranted reversal, (2) the trial court erred in refusing to propound a requested voir dire question, and (3) the evidence was insufficient to convict him of certain handgun offenses. (*Id*., Exhibit 7). The Court of Special Appeals of Maryland rejected these arguments and affirmed the convictions in an unreported opinion issued on April 9, 2003.[2] (*Id*., Exhibit 9). The Court of Appeals of Maryland denied petitioner's application for certiorari review on July 29, 2003. (*Id*., Exhibits 10 and 11).

On March 2, 2004, petitioner initiated post-conviction proceedings in the Circuit Court for Baltimore City. (*Id*., Exhibit 1). On August 12, 2004, the petition was withdrawn without prejudice. (*Id*.). A second petition filed on September 9, 2004, also was withdrawn without prejudice on January 27, 2005. (*Id*.). In a third petition filed on March 3, 2005, petitioner through counsel argued

that trial counsel was ineffective for failing to:

(a) conduct a reasonable investigation and prepare a defense;
(b) preserve exculpatory evidence by calling defense witnesses;
(c) interview potential defense witnesses or subpoena them for trial;
(d) state and particularize specific reasons why a motion for judgment of acquittal should be granted on all counts;
(e) suppress a photo array on grounds that identity was not at issue; and
(f) order copies of all trial transcripts for the purpose of appeal.

An allegation of ineffective assistance based on the cumulative effect of these errors also was made. Additionally, petitioner argued that post-trial counsel was ineffective for failing to file a motion for modification or reduction of sentence or advise petitioner of his right to file same.

---

[2] The mandate issued on May 9, 2003. *Id*.

(*Id*., Exhibit 12).

Following an evidentiary hearing on August 10, 2005, the post-conviction court issued a memorandum and order denying relief on all grounds raised. (*Id*., Exhibits 1, 13 and 14). Petitioner through counsel filed an application for leave to appeal arguing that trial counsel was ineffective for failing to (1) make a motion for judgment of acquittal based on insufficient evidence of attempted first degree murder, (2) call witnesses and submit documentary evidence, and (3) conduct an adequate investigation of the case. (*Id*., Exhibit 15). Petitioner filed a *pro se* supplement to the application, arguing that appellate counsel was ineffective for failing to order transcripts for the appeal. (*Id*., Exhibit 16). In an unreported opinion filed on December 23, 2005, the Court of Special Appeals of Maryland summarily denied the application for leave to appeal. (*Id*., Exhibit 17).

On January 27, 2006, petitioner sought habeas corpus relief in this Court, alleging:

(1) Ineffective assistance of trial counsel for:

- (a) failing to conduct a reasonable investigation and prepare a defense;
- (b) failing to present exculpatory evidence by calling defense witnesses;
- (c) failing to interview potential defense witnesses or subpoena them for trial;
- (d) failing to state and particularize specific reasons for granting a motion for judgment of acquittal on all counts;
- (e) failing to suppress a photo array on grounds that identity was not an issue;
- (f) failing to make a motion for judgment of acquittal as to attempted first degree murder; and
- (g) failing to present documentary evidence on his behalf.

Petitioner also claims counsel was ineffective based on the cumulative effect of these errors (Ground (1)(h). He further alleges:

(2) Appellate counsel was ineffective for failing to order transcripts;

  (3) The trial court erred in failing to propound his requested voir dire question;

(4) The prosecutor made improper closing argument; and

(5) There was insufficient evidence to sustain the two handgun convictions.

(Paper No. 1, Grounds 1-5).

**Threshold Considerations**

**Timeliness**

Respondents do not contend, and the court does not find, that the Petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1).

**Exhaustion of State Remedies**

Under *Rose v. Lundy*, 455 U.S. 509 (1982), those petitioning for federal habeas corpus relief must first exhaust each claim by pursuing remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. §§ 2254(b)-( c); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999); *Gray v. Netherland,* 518 U.S. 152, 162-63 (1996). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by petitioning the Court of Special Appeals for leave to appeal. Wood no longer has any state direct review or collateral review remedies available to him with respect to the claims raised in this c,ourt and accordingly, his claims will be considered exhausted for the purpose of federal habeas corpus review.

**Procedural Default**

Respondents contend that petitioner's ineffective assistance of counsel claims concerning

the motion for judgment for acquittal (Claim (1)(d)), suppression of a photo array (Claim (1)(e), the presentation of documentary evidence (Claim (1)(g), and the cumulative effect of multiple errors (Claim (1)(h) are procedurally defaulted. They contend that Claim (3) concerning the trial court's failure to propound a requested voir dire question on race bias is defaulted because it was deemed waived on appellate review. Respondents also contend that the second ground concerning appellate counsel's failure to order transcripts is defaulted, because petitioner argued at post-conviction that trial counsel (not appellate counsel) was at fault for failing to obtain the transcripts for use on appeal. They further contend that petitioner's claim concerning sufficiency of the evidence with regard to the handgun convictions cannot be reviewed under the procedural default doctrine. (*Id*. at 16-17, 22-23, and 28-29). Petitioner argues that the grounds should be considered due to his "actual innocence."

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Supreme Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure. In *Harris v. Reed*, 489 U.S. 255, 267 (1989), the Court emphasized that a federal court has the responsibility to determine whether a state court in fact based its denial of relief on procedural grounds. In *Teague v. Lane*, 489 U.S. 288, 299 (1989), however, the Court determined that the rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding. *See id***.** at 299. Thus, claims which have never been presented in the state courts--or claims which were not

exhausted properly in the state courts--are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *See Johnson v. Maryland*, 915 F.2d 892, 895 (4th Cir. 1990).

Petitioner's ineffective assistance claims concerning the motion for judgment of acquittal, suppression of the photo array, and the cumulative effect of counsel's errors were raised at the post-conviction hearing but not in the counseled or *pro se* applications for leave to appeal the denial of post-conviction relief. Infirmities in state post-conviction proceedings cannot serve as a basis for federal habeas corpus relief. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988). These three grounds are procedurally defaulted.

The court finds that petitioner's claim concerning appellate counsel's failure to order transcripts has been preserved and is not subject to procedural default. While petitioner initally attacked trial counsel for failing to order the transcripts, testimony at the post-conviction hearing clarified which attorney actually handled his direct appeal. Petitioner was represented at trial by the law firm of Schulman, Treem, Kaminkow, Gilden & Ravenell, PA. Prior to trial, petitioner dealt primarily with Michael Kaminkow. Another attorney from the firm, Rodney Warren, handled petitioner's trial. After petitioner was convicted, he and his family requested a different lawyer in the firm, Kenneth Ravenell, handle the appeal. (*See* Paper No. 17, Exhibit 13 at 7-9). Barring the question of ineffective assistance of appellate counsel from federal review based on confusion as to which lawyer in a particular law firm handled an appeal would require overly rigid application of the procedural default doctrine. Accordingly, second claim will be considered on the merits.

Similarly, petitioner's claim concerning counsel's failure to submit documentary evidence (Claim (1)(g)), although not set forth in the post-conviction petition, was presented at the hearing

and again in the application for leave to appeal. It, too, shall be considered on the merits.

Petitioner's third claim concerning trial court error and his fifth claim that evidence was insufficient to support the handgun convictions are procedurally defaulted. On direct appeal, the Court of Special Appeals found these arguments to be waived because counsel did not make a proper objection to the trial court's failure to give the voir dire question and did not make a proper motion for judgment of acquittal as to the handgun charges.[3] (*Id*., Exhibit 9 at 19).

Petitioner has not met the first exception to the procedural default doctrine by showing cause for default as to Grounds (1)(d), (1)(e), (1)(h), (3) and (5). The second exception, the miscarriage of justice standard, is directly linked to innocence. *See Schlup v. Delo***,** 513 U.S. 298, 320 (1995). Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*.; *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986). To meet this standard petitioner must show it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Id*.

*Schlup* observes that:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial**.**

*Id*. at 324; *see also House v. Bell*, 126 S. Ct. 2064, 2077-78 (2006).

Petitioner has failed to present such evidence, and review of the record does not suggest that

---

[3] The appellate court also indicated that had the claim of trial court error been preserved for review, it would present no reason to overturn the conviction. Despite this alternative ruling, this court must consider the appellate court's independent reasoning concerning waiver dispositive as to the issue, thus barring review of the claim here under the procedural default doctrine. *See Harris v. Reed*, 489 U.S.. 255 (1989). In any event, there is no merit to petitioner's claim of trial court error.

it exists. Petitioner has failed to overcome the procedural bar and thus, Grounds (1)(d), (1)(e), (1)(h) and (5) are procedurally defaulted and foreclosed from federal habeas review.[4]

**Standard of Review**

Because this Petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001). AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *See Bell v. Cone*, 535 U.S. 685, 693 (2002). Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that

---

[4] The Fourth Circuit deems it appropriate to address the merits of claims where it is uncertain whether a state procedural rule could be properly considered adequate and independent grounds for invoking the procedural default doctrine. *See Burket v. Angelone*, 208 F.3d 172, 184 (4th Cir. 2000) (reviewing merits of habeas corpus claims where scope of procedural bar was unclear); *Bacon v. Lee*, 225 F.3d 470, 477 (4th Cir. 2000); *Royal v. Taylor*, 188 F.3d 239, 248 (4th Cir. 1999); *see also concurring opinion, McNeill v. Polk*, ___ F.3d ___, 2007 WL 258174, ** 9-10 (4th Cir. 2007). The determinations by the post-conviction court denying petitioner's claims of ineffective assistance of counsel on the merits appear reasonable and would be upheld here pursuant to 28 U.S.C. §2254(d).

contradicts the governing law set forth in our cases." *Williams v. Taylor,* 529 U.S. 362, 405 (2000).[5] Section 2254(d) also requires federal courts to give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. A petitioner has the burden of rebutting the presumption of correctness, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see also Stroud v, Polk*, 466 F.3d 291, 295 (4th Cir. 2006). Using this framework, the undersigned now examines petitioner's remaining claims of ineffective assistance of trial and appellate counsel, trial court error, and prosecutorial misconduct in closing argument.

**<u>Analysis of Petitioner's Undefaulted Claims</u>**

**Ineffective Assistance of Trial Counsel**

To establish a claim of ineffective assistance, petitioner must show that "counsel's re-presentation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

5 Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002) (*per curiam*), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). With regard to the first prong of this test, this court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. All circumstances are to be considered, and the court's scrutiny of counsel's conduct must be "highly deferential." *Id.* at 688-89.

Even if it is determined that counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A federal writ can be granted only if a state court decision "was contrary to, or involved an unreasonable application of, clearly established" precedents of the Supreme Court. 28 U.S.C. § 2254(d)(1). This "unreasonable application" prong permits the writ to be granted when a state court identifies the correct governing legal principle but unreasonably applies it to the facts of a petitioner's case. *See Williams*, 529 U.S. at 413. For this standard to be satisfied, the state court decision must have been "objectively unreasonable," *id*. at 409, not just incorrect or erroneous.

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if petitioner can establish counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.[6] *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Ineffective assistance is not necessarily shown when counsel fails to present every non-frivolous issue on appeal; counsel may decline to appeal a non-frivolous but weaker issue

---

[6] Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome. *See Evitts*, 469 U.S. at 396.

if doing so would have the effect of diluting stronger arguments on appeal.[7] *See Jones v. Barnes*, 463 U.S. 745, 752 (1983). Furthermore, appellate counsel cannot be found deficient for failing to present issues not preserved for appellate review. *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The Court of Special Appeals summed up the evidence leading to petitioner's conviction as follows:

> On July 25, 1999, Baltimore City Police Officer William Pohler found Lance Holland laying inside the B&O Museum property, located on Pratt Street, Baltimore, Maryland. Holland....stated that he had been shot in the abdomen while he was on the 900 block of West Lombard Street. According to Pohler, although Holland was "conscious," he "seemed like...he was in, like in a bit of shock." Holland informed Pohler that he had been approached by a black male, about twenty-five to thirty years old, five foot six inches tall with a slim build, wearing a white shirt and blue jean shorts, and that the man was with at least one other individual and possibly two. Holland did not provide the officer with the names of any of the suspects or state that he knew them.
>
> According to Officer Pohler's report [footnote omitted], Holland stated that the first suspect approached him, pointed a handgun at him, and demanded money. In an attempt to defend himself, Holland grabbed for the gun and struggled with the suspect, which caused the gun to fire, wounding Holland in the stomach. The suspect then reached into Holland's pants and took an unknown amount of U.S. currency. The suspect got into an older model burgundy Range Rover and left the area. Holland ran to the B&O Museum, where he collapsed on the ground. He was later taken by ambulance to University Hospital.
>
> After Holland was taken to the hospital, Officer Pohler and Detective Baublitz went to the 900 block of West Lombard Street where Holland's car

---

[7] *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (strategic and tactical choices regarding the best issues to pursue on appeal properly left to sound professional judgment of counsel); *Smith v. Murray*, 477 U.S. 527, 534 (1986) (decision to forego claim that has little chance of success does not amount to ineffective assistance of counsel).

was being processed.* Inside the car, the officers found one thousand dollars under the driver's seat and forty cents inside the door.

Holland, who owned a neighborhood grocery store, testified that he had known appellant since the 1990s and had employed appellant at that store. Considering appellant a close friend, Holland had lent him money on several occasions.

On the day of the shooting, Holland went to appellant's house to lend him two or three hundred dollars. After meeting appellant on the porch to make the loan, Holland, at appellant's request, drove appellant to his car. They remained inside Holland's car and continued to talk. During their conversation, Holland saw two men approach his driver's side car door, open the door, and "put a gun to [his] head." Appellant's friend "Earl" held the handgun. When asked "what was going on," appellant told Holland to "shut the F up." Holland was pulled from the car and the two men pushed, shoved, and hit him with a "little bat." Both men wore surgical gloves. Eventually, appellant got out of the car, walked over to the location where the other men were holding Holland, again told him to "shut the F up," and walked to an adjacent alley. The other two men forced Holland into the back of a Range Rover. Once inside the vehicle, a gun was held to the back of Holland's head and he was told again to shut up. He was shot when he wrestled with one of the men. Holland was able to get out of the vehicle and looked for a path to escape. At that point he heard a voice saying "don't do it Lance, don't do it" and saw appellant running toward him. Holland ran to the B&O Museum, where he collapsed. Holland remembered talking with someone after he collapsed at the B&O Museum, but that he "was in and out" and therefore could not recall answering Officer Pohler's questions.**

He recalled later talking to Detective Baublitz during his stay in the hospital and after he was released. During the first visit by the police, Holland identified appellant from a photo array, but he was not able to identify the other two assailants.

---

* It is unclear how the officers became aware that Holland's car was being processed at the 900 block of West Lombard Street. Officer Baublitz first testified that Holland provided the information to the officers, but subsequently testified that Officer Crocker, who was with Holland at the B&O Museum, told him about Holland's car. Officer Baublitz further testified that Officer Pohler's report did not indicate the location of Holland's car.

** Holland testified during cross-examination that he only found out about Officer Pohler on the day he appeared in court to testify.

He stated that none of the suspects demanded money from him, but he "believed

wholeheartedly that [he] had been robbed."

Holland testified that the day in question was a Sunday, which was the day that he deposited money.*** He added that he was hospitalized for a few weeks, but that he did not sustain any permanent injuries. He could not recall if he had been robbed by the suspects or if he was missing any money.

In response to a shooting, Detective Harvey Baublitz was called to the B&O Museum on July 25, 1999. When he arrived, the medics were treating the victim's gunshot wound. After searching the area and finding none, he went to the rear alley on the 900 block of West Lombard Street where Holland's car was located. [footnote omitted]. The investigation unearthed one live and one spent nine millimeter cartridge, four dimes just outside Holland's car, and $1,000 in cash located under the driver's seat.

On July 27, 1999, Detective Baublitz spoke with Holland, who provided more details about his shooting, including "a little bit better description and information on the suspects." Holland stated that appellant, who he had identified in a photographic array, and "Earl" were involved in the shooting. He was unable to identify the third person.

Based on Holland's identification of appellant in the photo array, Detective Baublitz obtained an arrest warrant for him. Appellant was taken into custody on April 16, 2000. He provided answers for an information sheet and was read his rights. The information sheet indicated that appellant was "under the influence of drugs." Nevertheless, appellant consented to talking to the detective,**** but he did not want to give a taped or written statement. Instead, Detective Baublitz took notes, which were read back to, changed, and subsequently signed by appellant. Appellant stated that, on the day of the shooting, Holland had picked him up and they went to Holland's store. Upon returning to the back alley of 900 West Lombard Street, appellant observed four guys with concealed faces running from Schroeder Street. He told Holland to get out of there and then he ran in the opposite direction. He went on to describe being chased by two of the men and provided details about

*** Although he could not recall how he was transporting his deposit on the day he was shot, Holland testified that sometimes he transported the bank deposit in a paper bag under the driver's seat of his car.

**** Although Detective Baublitz testified that "yes" was checked in regard to whether appellant was under the influence of drugs, he testified on cross-examination that appellant did not appear to be under the influence of drugs or intoxicated.

people that witnessed the chase, having to get on a bus to escape, and various houses that he visited for shelter. Appellant told Detective Baublitz that two of the

> men wore masks and white gloves, two of them wore bandanas across their faces, and all of them had guns.
>
> Detective Baublitz testified to several inconsistencies that existed between Officer Pohler's report and his interviews with Holland. First, Officer Pohler's report stated that Holland was pulled out of the car by the suspects and that they demanded money, but Holland never responded to Detective Baublitz's questions about what the suspects said to him after he was pulled from the car. Second, Holland stated to Officer Pohler that appellant was wearing a white shirt and later stated that he was wearing a gray shirt. Third, the names of the suspects were not provided to Officer Pohler, but they were given to Detective Baublitz.
>
> During the course of Detective Baublitz's testimony, appellant made a motion for a mistrial, alleging that the court had "lost its ability to be fair in this case." The trial court denied the motion and the trial continued. After the testimony of Detective Baublitz, the State rested. Appellant made a motion for judgment of acquittal on all charges and was heard in regard to the charge of conspiracy to commit robbery with a dangerous and deadly weapon. The trial court denied the motion. Without presenting any evidence, the defense rested and appellant renewed his motion for judgment of acquittal, which was denied by the trial court.

(Paper No. 17, Exhibit 9 at 2-7).

In Claim (1)(a), (b), (c) and (g), Petitioner claims trial counsel failed to present a defense by presenting several witnesses and documentary evidence which, in his opinion, would have demonstrated that the victim owned a financially troubled store and owed people money, thus generating a defense that those people, not petitioner, attempted to kill him. At his post-conviction hearing, petitioner testified that Diane Ruff (his aunt), Barry Jones (his stepfather) and Romey Green (his cousin) would have testified at trial that Holland ran a "paraphernalia" store that had closed due to financial problems. (Paper No. 17, Exhibit 13 at 22-26). Petitioner also testified at the post-conviction hearing that Taralita Crafton (his aunt's daughter) and Karen Waters would have testified at trial that they observed petitioner and Holland being chased on the day of the incident. (*Id*., Exhibit 13 at 26). Petitioner stated trial counsel knew of these witnesses are the substance of their testimony, but failed to call them to testify. (*Id*., Exhibit 13 at 27-28).

Crafton testified at the post-conviction hearing that on the day of the incident, she and a friend (Karen Waters) were driving in Baltimore City when they saw Holland running south and petitioner running north. Two men were chasing Holland and two other men were chasing petitioner. Crafton did not observe any weapons and it did not appear to her that Holland was injured. (*Id*., Exhibit 13 at 29-31).

An affidavit introduced into evidence and signed by Barry Jones attested to Holland's financial struggles and stated that the utilities had been turned off and the store closed. (*Id*., Exhibit 13 at 38-39). Affidavits submitted by Romey Green and Diane Ruff indicated that Holland had visited Ruff's house the night before the incident complaining that people were after him and Holland asked for petitioner's help. Ruff also indicated that the store was struggling and sold paraphernalia. (*Id*., Exhibit 13 at 39). Documentation from Baltimore Gas & Electric Company was introduced as evidence that the store's electricity had been cut off, and other documents introduced to show an outstanding warrant for Holland's arrest.[8] (*Id*., Exhibit 13 at 40). Petitioner seemingly argues this evidence would have affected Holland's credibility before the jury and would have persuaded jurors that people other than petitioner had reason to harm Holland. [9]

The post-conviction court rejected the claim that the evidence constituted ineffective assistance which mandated a new trial, stating:

> At the Post Conviction hearing, Petitioner provided testimony through

---

[8] The record does not indicate the nature of the outstanding warrant, the crime(s) with which Holland was charged, whether the warrant was ever executed, or whether Holland was actually convicted in connection with crime(s) charged in the warrant.

[9] Petitioner alleged that counsel's failure to call the witnesses and present the documents prejudiced the trial, and testified that trial counsel was aware of these witnesses and their potential testimony, but did not personally interview the witnesses prior to trial. (*Id*., Exhibit 3 at 181-83; Exhibit 4 at 66, and Exhibit 13 at 7-9). Petitioner did not call any of the attorneys from the Schulman law firm, including Warren, his trial counsel, to testify at his post-conviction hearing.

> witnesses and affidavits of the substance of these witnesses' testimony, had it been presented at trial. Most of these witnesses wanted to testify about Mr. Holland's financial situation and the products he sold at his store. Another witness, Taralita Crafton, could not identify a time that she saw the Petitioner and Mr. Holland running through the alley, nor could she testify that she saw a weapon or anyone injured.
>
> There is no indication that any of this testimony at trial would have had a substantial outcome on the verdict. None of these witnesses would have provided any crucial information to the defense's case. At trial, Mr. Holland testified that the store did not make that much money, and any testimony from the defense witnesses confirming this would have been cumulative. Transcript, January 24, 2002 at 46. The transcripts reveal that Mr. Warren thoroughly cross-examined all of the State's witnesses at trial and that Petitioner invoked his right not to testify on his own behalf. Without evidence to the contrary, the Court must assume that Mr. Warren had tactical reasons for not presenting any of these witnesses at trial. Petitioner has not met his burden to demonstrate otherwise.

(*Id*., Exhibit 14 at 6).

This finding is supported by the record. Trial counsel was aware of these potential witnesses but did not call them to testify at trial. Instead, counsel attempted to attack the investigators' and victim's recollection of the events surrounding the incident in order to persuade jurors that various inconsistencies required a finding that the State had not proved its case beyond a reasonable doubt. None of the evidence suggested by petitioner would have explained why the victim, who until the incident considered petitioner a close friend, would implicate petitioner in the crime. Counsel's apparent strategy to forego certain testimony in order to focus on inconsistencies in the witnesses' testimony was reasonable and survives scrutiny under *Strickland*.

Petitioner next contends that he was prejudiced as a result of trial counsel's failure to make a motion for judgment of acquittal as to the charge of attempted first degree murder (Claim (1)(f)). The post-conviction court noted that under Maryland law, in order to have a judgment for acquittal, there must be "nothing for the jury to decide, and, upon proper motion, the judge is duty-bound, as

a matter of law, to enter a judgment of acquittal." (Citation omitted). (Paper No. 17, Exhibit 14 at 11). The court also cited Maryland Rule 4-324(a), which requires the defense to state with particularity all reasons why a motion for judgment of acquittal should be granted, and concluded as follows:

> At trial, there was evidence presented to support a verdict under the case ending in 34. The counts in this case included attempted murder in the first degree, attempted murder in the second degree, first and second degree assault, and various handgun violations. Mr. Holland testified at trial that Petitioner was present on the day he was beaten, shot and robbed. Transcript, January 24, 2002 at 51-58. From Mr. Holland's cumulative testimony, the State raised at least some evidence to qualify these charges to go to a jury for deliberation. Had Mr. Warren asked for a judgement of acquittal on the case ending in 34, it would have likely proved futile.

(Paper No. 17, Exhibit 14 at 11). This finding is supported by the record and will not be overturned here.

Petitioner also contends that counsel was ineffective for failing to order the sentencing transcript for review on direct appeal. Although the post-conviction petition stated the transcript involved a proceeding held October 28, 2002, it is apparent that petitioner is complaining that the motion for new trial was argued at petitioner's sentencing hearing, held on March 28, 2002. Although post-conviction counsel argued the transcription notes were lost after the court reporter moved, *id*., Exhibit 13 at 48, the undersigned notes that the transcript of the March 28, 2002, proceeding is a part of this record. (Paper No. 17, Exhibit 6). The post-conviction court found that petitioner did not meet his burden of showing why the allegedly missing transcript was necessary and did not attempt to recreate the record of the motion for new trial.[10] This finding is objectively

---

[10] The post-conviction court found that a transcript of the hearing on petitioner's motion for new trial, allegedly held February 16, 2002, appeared to be unavailable due to court reporter error. *Id*., Exhibit 14 at 13. The undersigned finds nothing in the case docket to support the conclusion that a new trial hearing was held on that date. *Id*., Paper No. 1.

reasonable and will be upheld here.

The Prosecutor's Closing Argument

In closing, the prosecutor stated:

> So what [defense counsel] wants you to believe is speculation. You can't speculate. You've got to believe beyond a reasonable doubt, not an unreasonable doubt, beyond a reasonable doubt. The defendant lied in his statement. He didn't go see his best friend in the hospital. He didn't report having this happen to him to the cops, and he screwed up by not telling the cops when he did it that his home boy was shot.
>
> He seemed to forget that, I guess, but the point is that's all lies, because the truth is in what Lance Holland told you. You know it and I know it."

(*Id*., Exhibit 5 at 51). On appeal, petitioner argued that the court's failure to sustain his objection to this comment was reversible error because it represented the prosecutor's personal opinion as to the veracity of the witnesses. (*Id*., Exhibit 7 at 5-7). Noting that in Maryland, challenges to the scope of closing argument are left to the discretion of the trial court *(id.,* exhibits 9 at 8-9), the intermediate appellate court further stated that:

> Holland's credibility was central to the outcome of this case, and to be sure, the State's comment was designed to enhance Holland's testimony and to diminish appellant's account of the incident as presented by Detective Baublitz. We cannot conclude, however, that the State's comment unfairly prejudiced appellant or misled the jury. The statement was based on the evidence before the jury and reflected the State's belief that Holland's testimony was more credible than appellant's. Read in context of the State's summary of the testimony presented by Holland, it was clear that the State's assertion was based on the evidence presented to the jury. Because the trial court was in the position to hear and decide the effect of the State's comment, we are not persuaded that the trial court abused its discretion in overruling appellant's objection.

(*Id*., Exhibit 9 at 12).

Undesirable remarks by the prosecution do not necessarily mandate a new trial, unless they so infect the trial with unfairness that the resulting conviction is a denial of due process. *See Darden*

*v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *United States v. Weatherless*, 734 F.2d 179, 182 (4th Cir. 1994). In determining whether improper prosecutorial comments so damaged the trial as to require reversal, a court must consider (1) the degree to which the comments misled the jury and prejudiced the accused; (2) whether the comments were isolated or extensive; (3) whether competent proof established guilt, irrespective of the comments; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. *See United States v. Harrison*, 716 F.2d 1050, 1052 (4th Cir. 1983); *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988); *United States v. Odom*, 736 F.2d 104, 118 (4th Cir. 1984). Here, as noted by the Maryland Court of Special Appeals, the one objectionable comment was based on evidence before the jury. Relief therefore must be denied, pursuant to 28 U.S.C. §2254(d).

This court has considered the trial record in light of the deferential standard for evaluating state court rulings, and concludes that the decisions of the state appellate and post-conviction courts are objectively reasonable and align with Supreme Court precedent. The state courts' findings with regard to petitioner's undefaulted claims must be upheld pursuant to 28 U.S.C. §2254(d) and (e). This petition for habeas corpus relief is denied and dismissed. A separate order shall be entered accordingly.

August 27, 2007
Date

/s/
Catherine C. Blake
United States District Judge

20